IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| MAXMARKETPLACES, Inc. | ) |

PLEA AGREEMENT AND CONDITIONS

The United States of America represented by the United States Attorney's Office for the Northern District of Alabama and the defendant's attorney, each hereby acknowledges the following to be the plea agreement between the United States and the defendant and the conditions and understandings that apply to the agreement:

I.    PLEA AGREEMENT: The United States and the defendant hereby AGREE to the following:

   (a)   Plea: The defendant will plead guilty to Count One of the Information.

   (b)   Factual Basis:

In September 2002, the Department of Defense (DOD) and the National Aeronautical Space Agency (NASA) and the FBI began a joint investigation

1

involving manufactures, distributors and suppliers of substandard parts. These parts consisted of several fasteners (nuts and bolts) that were being certified as meeting stringent specifications when in fact they were commercial (off the shelf parts) which did not meet the required specifications.

NASA, DOD and the aviation industry extensively use certain types of hardware, known as "fasteners" and "fittings" in the manufacture of space craft, weapon systems, aircraft, and other equipment. Whether for commercial airline or military use, aerospace fasteners must meet rigid specifications, which have been established.

The specifications for a given part are published in Military Specification and Standards Service and designated by prefix and number. This is widely known in the fastener industry. The prefixes used are "MS" (military standard), "NAS" ( national aerospace standard), and others. For example, a part designated as "MS 35333-75" must conform to the various requirements under that specification.

The primary difference between MS/NAS designated fasteners and ordinary commercial grade fasteners is that the manufacturing processes and testing required for MS/NAS parts are far more rigorous than for commercial grade fasteners. Because the MS/NAS parts are often used in applications where safety is critical, the additional testing and higher performance requirements are meant to ensure that

the parts will not fail under high-stress conditions. The specific testing requirements for MS/NAS fasteners include testing for proper dimensions, proper chemical composition, plating thickness, metallurgy, heat treatment, Rockwell hardness, stress durability, wedge tensile strength, dye penetration and magnetic particle inspection. These tests are normally performed during production of the parts and/or at some later stage. Testing results should remain on file with the original manufacturer and/or accompany the parts.

Further in order to provide further assurance to NASA, DOD, and their contractors, the suppliers of such MS/NAS fasteners and fittings are generally required to execute and provide a document know as a "Certificate of Conformance" ("COC"). This document is provided and signed by a representative of the manufacturer, distributor, or other supplier of the relevant part. Generally, the COC certifies that the parts have been tested and are in compliance with all applicable specifications. COC's from the manufacturer or intermediary distributors accompany shipments to establish the chain of ownership and compliance of the parts.

In 2002, NASA and the FBI established an undercover (UC) business, Alpha Technologies, that posed as a government contractor. The (UC) contractor solicited bids from the defendant and other manufacturers of mil-spec fasteners. The (UC)

received a quote from the defendant and subsequently ordered military specification fasteners from the defendant. The defendant issued a certificate of conformance (COC), dated December 27, 2002, claiming that the fasteners met all mil-spec requirements. This COC was signed by the quality assurance representative of the defendant and was included with the shipment of fasteners to the UC business. Even though it was known by the defendant corporation that the parts in fact did not meet mil-spec the defendant knowingly certified that the parts did meet military specifications.

Subsequent interviews with the employees of the defendant corporation confirmed that the defendant corporation was aware that what they provided did not meet mil-spec and this was not an isolated incident but policy of the corporation. The testing and other mil-spec requirements were only done when requested specifically by the customer, otherwise the defendant corporation would certify to mil-spec without meeting the requirements. Further, by not meeting the required specifications unless specifically asked the defendant corporation could make more profit and sell a less expensive product.

(c)   <u>Joint Recommendation Regarding Sentence</u>: The United States and Defendant MAXMARKETPLACES,Inc.agree pursuant to Rule 11(c)(1)(C) of the

4

Federal Rules of Criminal procedure that, upon entry of the guilty pleas by the defendant, the appropriate disposition of this case shall be as follows:

    1. Defendant shall pay a fine of twenty five dollars ($25,000).

    2. Defendant shall be placed on probation for three years.

    3. In the event the Court rejects the plea agreement, the Defendant will be entitled to the remedies available under Fed. R. Crim. Proc. 11(c)(5).

    (d)    <u>Special Assessment Fee</u>: On the date it enters the guilty pleas, the defendant will produce a money order or cashier's check in an amount equal to $400.00 for each count, for a total of $400.00, payable to the "Clerk, United States District Court" by virtue of the special assessment requirement of Title 18, United States Code, Section 3013. Immediately upon entry of the plea, the defendant will pay assessment to the Clerk of the Court.

II.    <u>CONDITIONS AND UNDERSTANDINGS</u>: The following conditions and understandings apply to the above stated plea agreement:

    (1)    <u>Maximum Possible Sentences</u>: The defendant is aware of the maximum possible sentence under the Information. The maximum possible fine for Count One is $500,000 or twice the gross gain or loss suffered as a result of the offense. 29 U.S.C. §666(e); 18 U.S.C. §3571. The defendant is aware that a

sentence could include fines, assessments, and probation.

(2) <u>Guidelines</u>: Congress has created Sentencing Guidelines which set a sentencing range in this case. These Guidelines take into consideration, among other things, the nature and consequences of the offense, whether the defendant's role in the offense, other conduct of the defendant relevant to the offense, whether the defendant has accepted responsibility, whether the defendant has obstructed justice, and the defendant's criminal record. The defendant understands that Chapter 8 of the Sentencing Guidelines set forth the parameters for criminal fines for corporations committing offenses under United States Code, Title 18. The defendant also understands that Chapter 8 does not apply to criminal fines for corporations committing offenses under United States Code Title 42.

Counsel has explained to the defendant that, in light of the United States Supreme Court's recent decision in <u>United States v. Booker</u>, the federal sentencing guidelines are advisory in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

The Court may even decide that the recommended sentence is not within the

6

Guidelines range and may not follow the recommendation for that reason. Also, the Court may, for just cause, impose a sentence above or below the guideline range, even the maximum possible sentence under the law.

(3) Non-Binding: It is the Court's duty to impose sentence. The Court is not a party to the above plea agreement. Any sentence recommendation by the United States does not bind the Court, and the Court may impose a more severe or less severe sentence than that recommended. However, in the event the Court rejects the plea agreement, the Defendant will be entitled to the remedies available under Fed. R. Crim. Proc. 11(c)(5).

(4) Sentencing Information: The United States may make any facts or evidence it deems relevant to sentencing known to the Court. The United States reserves full rights of allocution.

## WITHDRAWAL OF GUILTY PLEA

Except as otherwise provided in this plea agreement, the defendant may not withdraw the plea of guilty once it has been entered.

## FAMILIARITY WITH CHARGES

The defendant is aware of the charges, and the charges and possible defenses

7

have been discussed with counsel. The defendant is fully aware of the elements charges in Count One of the Information. The defendant has been informed of the necessary proof required of the government for each element of 18 U.S.C. §1001 as stated in of the Information.

## ACKNOWLEDGMENT OF GUILT AND AUTHORIZATION TO ENTER GUILTY PLEAS

The defendant is pleading guilty to the charges described above because the defendant is in fact guilty. The defendant will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors of MAXMARKETPLACES, Inc., owner of defendant corporation, with both notary and corporate seals, certifying that defendant is authorized to plead guilty to the charges as set forth in the Information, and to enter into and comply with all provisions of this Plea Agreement. The resolution shall further certify that the Chairman of the Board of MAXMARKETPLACES, Inc., on behalf of defendant, and its designees, are authorized to take these actions and that all corporate formalities, including, but not limited to, approval by defendant's directors, required for such authorization have been observed.

## WAIVERS

By pleading guilty the defendant waives and agrees to waive any and all motions, defenses, objections, or requests which have been made or which could have been made in this case. The defendant also waives the right to trial by a jury (or a judge if the defendant elected to be tried by a judge alone). At any such trial the defendant would have the right to assistance of counsel, to confront and cross-examine the witnesses against the defendant, to present evidence on the defendant's behalf, to compel the attendance of witnesses for the defense, and to testify or refuse to testify. The United States would have the burden of proving the case against the defendant beyond a reasonable doubt. The defendant would be presumed innocent and could only be convicted if a jury of twelve people (or a judge if the defendant elects to be tried by a judge) unanimously found the defendant to be guilty beyond a reasonable doubt. The defendant would have the right to appeal a guilty verdict. All these rights and protections are hereby waived. The defendant further waives the right to appeal the conviction(s) and sentence as set out subsequently in this agreement.

## WAIVER OF RIGHT TO APPEAL

In consideration of the potential disposition of this case as set forth above,

the defendant waives its right to appeal to appeal its conviction in this case, any sentence the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. §2255.

## COUNSEL

The defendant has discussed this case at length with defendant's counsel. The defendant is satisfied with counsel's investigation of the case, exploration of possible defenses, advice and other representation.

## NON-RELIANCE

Other than what is contained in this document, NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO THE DEFENDANT BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED, TO INDUCE THE DEFENDANT TO PLEAD GUILTY. The defendant is not relying on any representations from anyone regarding possible parole or release dates. This document represents the sole agreement and understanding between the defendant and the United States.

## POST SENTENCE ACTIONS

This document in no way limits any response by the United States to post-sentencing actions, including appeals, motions to correct or review sentences, or habeas corpus petitions. It is expressly understood and agreed that nothing in the plea agreement shall limit the right of any agency or office of the United States, to seek and take civil or administrative action, including any such action relating to suspension or debarment or listing.

This document DOES NOT BIND any other United States Attorney in any other district, or any state or local authorities.

## TAX PROCEEDINGS

Unless otherwise specified herein, this document in no way applies to or limits any pending or prospective proceedings, related to the defendant's tax liabilities, if any.

## COMPETENCE

The defendant's representative has not had any drugs, medication or alcohol within the past 48 hours except as stated hereafter, and is competent to enter the plea agreement stated above on behalf of the defendant.

## ACKNOWLEDGMENTS

1. I have READ this document, DISCUSSED it with my attorney, and UNDERSTAND and AGREE with all its provisions both individually and totally.

    _12/7/07_  
    DATE

    _[signature]_  
    DEFENDANT

2. I have discussed this case with the defendant in detail and have advised the defendant of the defendant's right and all possible defenses. The defendant has conveyed to me that the defendant understands this document and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

    _12/10/07_  
    DATE

    _[signature]_  
    COUNSEL

3. I have reviewed this document and agree to its provisions.

    _12/19/07_  
    DATE

    ALICE H. MARTIN  
    UNITED STATES ATTORNEY

    _[signature]_  
    DAVID H. ESTES  
    ASSISTANT UNITED STATES ATTORNEY